Ashburn, J.
Kasper Lenze prosecutes this action for-damages ; alleges that he was the owner of a certain building ; that defendant caused it to be torn down ; that, desiring to remove his building from the corner of Erankfort and Seneca streets to the corner of St. Clair and Seneca, he procured a permit from defendant to do so; that whilst in the act of removing it the defendant stopped him and wrongfully and with force tore down his building; and claims that he was damaged in the following particulars v That “the defendant wrongfully and unlawfully, and with force and violence tore down and destroyed said building, and the same became and was w’holly lost to said plaintiff; whereby said plaintiff was damaged in the sum of $8,000 for the loss thereof. And the said plaintiff says he was further damaged by the said defendant on account of the loss of said building in the preparing said building to be 'removed, material, labor, and moving, in the sum of $823. And the said plaintiff says he was further damaged by said defendant by its destruction of said building, in the expense he sustained for the wages of watchmen, lights, lamps, etc., during the time of moving same, to the amount. *385 of $60. And the said plaintiff says that he was further damaged by said defendant on account of the cost and expense which defendant wrongfully forced plaintiff to pay for tearing down said building, amounting to the sum of $419. Said plaintiff says he was further damaged by defendant in the loss and destruction of gas-pipe in said building in the sum of $200. Said plaintiff says he was-further damaged by said defendant (was forced) removing lumber, rubbish, etc., from the street where1 the building was torn down in the sum of $774. Said plaintiff further-says that he sustained further damage by the wrongful and unlawful destruction of said building in the loss of rents, which he was then in the receipt of, and which thereby became and was lost to said plaintiff in the sum of $2,700.”
Defendant answered, denying specially the material allegations in the petition, and alleges the building was not moved in pursuance of a permit granted to him; that the-city granted a permit to Ingham & Treat to move this building and four others through Seneca and St. Clair streets; that they were to be taken beyond or east of Erie-street on St. Clair street; that the building was moved into-Seneca street, in pursuance of this permission to Ingham & Trefit; that when the building was standing in'and .obstructing the travel on Seneca street, the plaintiff agreed to-take down and remove the building, and if he failed to do so, then the defendant and its agents or servants should be authorized to tear down and remove the building; that plaintiff failed to do as he agreed, and the defendant notified him, and also Ingham & Treat, to remove the building in six days, or defendant would take the necessary steps to do so ; that plaintiff still neglecting to remove the building from the street, legal proceedings were commenced against him, under one of the city ordinances, for obstructing a public street; that he was adjudged guilty, fined, and an order made by the Police Court, ordering the captain and acting superintendent of the metropolitan force of the city to forthwith remove or tear down said building then ob *386 ■■structing Seneca street; that the building was torn down, in pursuance of this order of the court, and the material placed on his lot, etc. — denies specially all damages.
The plaintiff put in a reply, admitting some of the allegations in the answer — denying, others; sets up some new matter, but nothing that is necessary to state in order to have an understanding of the case.
A final trial in the Common Pleas resulted in a verdict in favor of the defendant. Motion for new trial heard and •overruled. A bill of exceptions, embodying all the testimony, filed in the case. Petition in error, prosecuted in the District Court, resulted in the reversal of the judgment ■of the Court of Common Pleas. To reverse this judgment •of the District Court a petition in error was filed in the ■Supreme Court. Errors assignéd here : ■
“ I. That said court erred in holding that there was no violation of the ordinance to prevent the erection and placing of wooden buildings in designated territory within the •city of Cleveland, passed by the city council of said city, on the 10th day of May, a. d. 1854, to change the location of a wooden building, which was already standing within •said limits, from one point to another.
“ II. That said court erred in holding that the Court of •Common Pleas of Cuyahoga county erred in refusing to instruct the jury that the city was bound to give a reason.able time to make this building to comply with the ordinance of May 10, 1854, said right to be exercised by the plaintiff below in a careful and prudent manner
“TIL That said court erred in holding that the Court •of Common Pleas of Cuyahoga county erred in refusing to instruct the jury that if they should be of opinion that this building was wrongfully on the street opposite the corner lot leased of Bolton, then, and in that event there was no practical way of saving the building, except by putting 'it on this lot, the city had no right to tear down this building, without giving the plaintiff a reasonable chance to ■comply with the fire ordinance, by removing it upon this *387 •lot, and to so construct the walls and roof of this building iis to comply with the ordinance of the city. ‘
“IV. That said court erred in holding that the Court •of Common Pleas of Cuyahoga county erred in charging the jury that the city had the right to rescind the permit which had been given to move' the building to this lot, mid, having done so, bad the right to proceed under the'or■dinance of May 10th, 1854, to prevent the plaintiff from putting the building in question upon the lot on the corner of Seneca and St. Clair streets.
“V. That said court erred in holding that said plaintiff wrongfully prohibited said defendant from placing his wooden building on the lot leased of Judge Bolton.
“ VI. That said court erred in holding that said defendant ought to recover damages from said plaintiff, if any were sustained by said defendant by reason of having his building torn down by an order of the Police Court of the city of Cleveland, while standing on the street in front of said leased lot.
“ VII. That said court erred in reversing the judgment obtained by said plaintiff against said defendant in the -Court of Common Pleas of Cuyahoga county.
“VIII. That said judgment in the District Court was given for the said defendant, Xasper Lenze, when it ought to have been given for the said plaintiff, the city of Cleveland, according to the law of the land.”
The rulings of this court upon the questions involved in this assignment of errors appear with sufficient distinctness in the opinion.
It appears in the testimony that, in 1854, the city council •of Cleveland provided by ordinance that no person should •erect or place any building, or any addition to anybuilding, more than ten feet high, within the city limits “ bounded on the north by St. Clair street, on the east by Ontario street, on the south by Superior street, and on the west by Water street, unless the outer walls thereof be made of brick and mortar or of iron, or of stone and mortar, with parting walls rising at least ten inches above the roof, and *388 the roof or cornice thereof he made or covered with some fire-proof material.”
To secure obedience- to the requirements of the ordinance a severe pecuniary penalty was provided, to be collected by trial and conviction in the Police Court. This territory was known as the “ fire limit,” and the ordinance as the “fire ordinance.”
In another ordinance, it was provided “ that no person shall place, or cause to be placed, occupy, or permit to be occupied, a building or structure of any kind, upon any public ground, street, lane, or alley, now or heretofore established and laid out.”
A person violating this provision was to be notified by the board of city improvements to remove the building or structure in a given time, to be named by the board. On failure to comply with the notice, the offending party could be brought before the Police Court, and, if found guilty on the trial, fined $20, and the building or structure ordei’ed ■to be removed or torn down, at the discretion of the city marshal. This ordinance was known as the “ sti’eet oz’dinance.” Under this oz’dinance, Lenze was az’rested, fizzed, and the officers of the city ordered to remove or tear down his building. The effect of this proceeding against him and his property will be considered hereafter’.
In 1867, and long prior thereto, Kasper Lenze was the-owner of a wooden building, over ten feet in height, containing four store-z’ooms, valued at from $5,000 to $8,000, built in 1848, situate ozz the conzer óf Frankfort and Seneca streets, and within the “ fire limits” in the city of Cleveland. I-Iis lease there having expired, he wanted to remove the building and place it on a lot at the comer of St. Clair and Seneca stz’eets, a location also in the “ fire limits.” He applied to the city couzzcil for permission to move his building, azzd a permit was gz-anted him May 21st. On the 23d of May, he leased the lot on the corner of St. Clair and Seneca streets, of Judge Bolton, for a term of fifty .years. On the 28th of May, the city council revoked the permit. At the time of the revocation, the city council was advised *389 that Lenze had leased the lot on the corner of St. Clair and Seneca streets, on -which he designed to place his building. ‘The city could revoke the permit, but would be responsible for damages incurred, if any, by Lenze whilst it remained in force.
In July, 1867, Lenze, by the agency of Ingham & Treat, building movers, without objection on the part of the city, :and, Treat testifies, with the permission of the city council, moved the building into Seneca street, to a point immediately in front of the lot on the corner of St. Clair and Seneca streets. There the city authorities interposed and forbid placing of the building on the lot. Lenze testifies : “ Ingham & Treat moved it to the street up to this lot, and turned the wheels under the building to go on the lot, and "the city stopped me; should have moved it on in five hours if the city had not stopped me.” Treat \ estifies: “ I •could have moved the building on in four or five hours, if the city had not stopped me. . . "We had to use part •of St..- Clair street to move the building to St. Clair, so as to put it on this lot, and that is why St. Clair was put in the permit. . . I acted on this permit to move two buildings. The two buildings in the permit I understood to be this building of stores, and the block of five small houses on Frankfort street.”
From this testimony it is clear that this building, at the time the city authorities forbid its being placed on the lot, was lawfully and by the consent of the city in the public street. Lenze had not violated the fire ordinance, because his building was as yet in the street, and he had not violated the street ordinance, because it was in the street by permission of the city, and the license (three days) had not expired. As soon as objection was made by the city to placing the building on the lot, Lenze offered, if permitted to place it on the lot, to make the building conform in all respects to the requirements of the-fire ordinance, and to show .his good faith in making such offer tendered to the -city council a bond, with security, in the sum of $3,000. His *390 offer to make Ms building conform to the law and his bond were rejected by the city council. Heisly testifies :
“ At this time I was acting for Lenze as his counsel. I found the city would not let Lenze put the building on the-land he leased of Bolton. The city would not let him do anything with it but tear it down.”
On cross-examination, said:
“ They would not let us take it down St. Clair street. The city insisted that we should tear it down. Would not let us do anything else with it. Lenze offered the city a bond in the sum of $3,000 to make it comply in every respect to the fire ordinance, but the city would not allow him to do it. M. B. Clark said he had no confidence in him.”
In this matter the city was in fault, and acted oppressively. Lenze had violated no law, and it was not proper for the city to assume in advance that when his building-was placed on the lot he would fail to make the building-such an one as required by the fire ordinance. It should have been permitted him to do what we think he had the-legal right to do, place his building upon the lot and have-reasonable time in which to make the building one that would not be obnoxious to the provisions of the fire ordinance. Failing to do this, he would have subjected himself to the penalties of the ordinance.
This ordinance does not prohibit the removal of a building, lawfully in the “ fire limit,” from one lot to another within that territory. It would not be a violation of its-letter or spirit to move the building upon an adjoining lot and, if lawful, to move it twenty feet, it would be lawful to move it two or three hundred feet — the distance this-building was to be moved. The city might rightfully prescribe the manner and determine the restrictions under which the removal could be made short of prohibition. Ordinances, as statutes, should receive a reasonable construction with a view to carry out its intention as shown by its words when clearly expressed, and not extended beyond what they mean, or be enlarged by construction. The ordinance prohibits the erection or placing a building *391 •within certain limits which does not answer the description prescribed in the ordinance, but does not prohibit the removal of any building already within the fire limits from one part of it to another. This building was there at the time the, ordinance was made, and it was no violation of the ordinance to change its location from one point to another within the “fire limits.”
As before stated, Lenze was arrested, tried, found guilty, fined, and his building ordered to be removed or torn down for violating the street ordinance. This order of the Police Court made against his building is set out in the answer as a bar to the action for damages. Can it* have that effect? If plaintiff’s claim for' damages was confined alone to the taking down of the building, this order unreversed would present a serious obstacle in the way of his recovery. , But Lenze’s claim for damages has a broader foundation. As we have already determined, he was forcibly prohibited by the city from putting his building on his lot, and by so doing the city was placed in the wrong. The city could not lawfully require him to place his building elsewhere than on his own premises. Yet when the building was permitted to stand in the public street for more than three days it became obnoxious to the provisions of the street ordinance and the statute concerning nuisances, and might be removed or torn down without subjecting the party doing so to damages as a trespasser. The city, however, having done a wrongful act in prohibiting him from placing his building on his own lot — forcibly deprived him of a right — can not claim exemption from a liability to pay damages in abating a nuisance under color of law to the injury of*one of her citizens. The nuisance here arose out of her own wrongful act in forcibly depriving Lenze of the use of his property, and she must under the law respond to the consequences of her acts done contrary to and aggressive upon the rights of the individual. The amount of damages is to be determined by the facts and circumstances that may surround the case upon the trial.
The plaintiff’ in error, as a further defense, alleges that *392 Kasper Lenze, at Ms request, had a conference with the city authorities, “ and then and there agreed to and with the said board that the building then standing on and obstructing the public travel on Seneca street, and which had been unlawfully standing on and obstructing the said street for a long space of time, should by him, this plaintiff, be taken down and removed, and not placed on the said lot, corner of Seneca and St. Clair streets; or that in case he, the said plaintiff, should not take down and remove the ■same, that then this defendant, its agents, or servants, should be fully authorized to tear down and remove the said bkildings; and that he, the said plaintiff, would claim no damages from said defendant by reason thereof. That such agreement was made with the sg,id Lenze at the said time, and agreed to by said Lenze, for and in consideration of this defendant granting him, said plaintiff, the permission to remove said buildings, instead of said defendant doing the same at plaintiff’s cost.”
This can avail the city nothing. By a wrongful act the city created the necessity that resulted in the destruction of the building. It is a vain effort to contract the city out of her liability for damages. The alleged consideration for the agreement is ■ the privilege granted Lenze to tear down his own house, or exempt the city from harm in doing so — a building he had lawful right to put upon his lot without the consent of the city authorities. This is no consideration, and the alleged agreement is totally wanting in mutuality. For the want of mutuality and a valid consideration to support it, the agreement is void.
It follows from an application of these principles to the following instructions given, or refused to bfe given, that the court erred when it instructed the jury over the objection of Lenze:
“ If the jury find that this paper, signed by Kasper Lenze, bearing date July 29, 1867, was not revoked before the building was taken down, then the city had a right to proceed and tear it down, and although the jury should find that this building was torn down under and by virtue *393 •of the. order and judgment of the Police Court, still the city would be protected in the tearing down of this building, if this paper of July 29, 1867, had not been revoked.”
And also erred when it refused, on the request of Lenze, to instruct the jury:
“ That the city of Cleveland was bound' to give Kasper Lenze a reasonable time to make this building to comply with the fire ordinance of May 10, 1850, said right to be exercised by said Lenze in a careful and prudent manner.”
And “ that if the building was standing on the territory lying between Superior, Ontario, "Water, and St. Clair •streets at the time the ordinance of May 10, 1854, was passed to prevent the erection of wooden buildings, etc., ■then it was no violation of that ordinance to move said building on said territory from one place on it to another place on it.”
Judgment of the District Court, iu reversing the Common Pleas Court, affirmed. "
Scott, Chief Judge, Day, Wright, and Johnson, JJ., concurred.